

21st Floor
1251 Avenue of the Americas
New York, NY  10020-1104

**Robert D. Balin**
(212) 489-8230 tel
(212) 489-8340 fax

robbalin@dwt.com

January 20, 2022

**VIA ECF**

Honorable Gabriel W. Gorenstein
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Gray, et al. v. City of New York et al.*, 1:21-cv-06610-CM, consolidated for discovery purposes with *In Re: New York City Policing During Summer 2020 Demonstrations*, 1:20-cv-08924-CM

Dear Magistrate Judge Gorenstein:

Pursuant to Your Honor's Individual Rules 2.A, Plaintiffs in the above-captioned action ("Gray Plaintiffs") write to request that this Court compel Defendant City of New York to produce witnesses in response to two topics designated by the Gray Plaintiffs in their Fed. R. Civ. P. 30(b)(6) deposition notice ("Gray 30(b)(6) Notice").

### A.   Factual Background

As alleged in their First Amended Complaint ("FAC"), the Gray Plaintiffs are five professional photojournalists whom NYPD officers assaulted and/or arrested without probable cause during the 2020 George Floyd protests, thereby preventing them from engaging in First Amendment-protected newsgathering activity.  In their FAC, the Gray Plaintiffs plead a *Monell* claim against the City.  Specifically, the Gray Plaintiffs' allege that their assaults and arrests without probable cause arose from a longstanding and "widespread policy, custom and practice [by the NYPD] of obstructing and/or preventing members of the media from recording police activity in public locations, and of targeting, arresting and/or assaulting journalists for recording police activity in public places, in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution." *See, e.g.,* FAC, ECF No. 311, ¶ 129. The FAC further alleges that although the City, former Mayor de Blasio, former Police Commissioner Shea, and other NYPD supervisory personnel were aware of this policy, custom, and practice, they nonetheless failed to properly train NYPD officers about the First Amendment right of the public and press to record

DWT.COM

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.

Page 2

police activity in public places and failed to supervise and discipline NYPD officers for unlawful interference therewith. *See, e.g., id.* ¶ 131.

More than two months ago, on November 11, 2021, the Gray Plaintiffs served a 30(b)(6) Notice on the City, which seeks testimony on four Topics. *See* Ex. 1.[1] After an initial meet and confer between counsel for Gray Plaintiffs and the City on December 9, 2021, the Gray Plaintiffs agreed to narrow certain aspects of Topics 23 and 25, as requested by the City.[2] In turn, the City agreed that it would designate a deponent for these two Topics, which it finally did on January 20.

At the December 9 meet and confer[3], and thereafter, the City objected to Topics 24 and 26 in their entirety. Despite efforts by Gray Plaintiffs' counsel, the City has refused to engage in further discussion or designate witnesses to testify as to these two Topics. We therefore informed the City that the parties are at impasse, and that the Gray Plaintiffs would be filing this motion to compel.

**B.  The Disputed 30(b)(6) Topics**

**Topic 24.** Topic 24 in the Gray 30(b)(6) Notice seeks testimony regarding "**investigation, review, and/or revision** by the NYPD and/or City of New York of any policies, procedures, directives, or training materials relating to the issues described in Topic 23, as well as the bases for any such investigation, review, and/or revision." Ex. 1 (emphasis added). Topic 23, in turn, identifies policies, procedures, and directives relating to journalist-specific issues, including "Officers' treatment of and response to any members of the press…photographing, taking video of, or otherwise recording police activity;" "Officers' interference with individuals taking photographs or recording video in public;" officers treatment of "individuals who identify themselves as journalists," or who carry "NYPD-issued press credentials" or "press credentials not issued by the NYPD;" and "Officers treatment of members of the press and/or visual journalists in the context of protests, demonstrations, or other large gatherings, including but not limited to the racial justice protests in New Yoks City in the spring and summer of 2020." *Id.* Further, Topic 24 requests testimony relating to whether any investigation, review or policy revision was considered or took place in response to: police/journalist incidents that are specifically-identified in the Gray Plaintiffs' FAC (¶¶ 105-18); lawsuits brought by members of the press asserting

---

[1] The numbering in the Gray 30(b)(6) Notice starts at Topic 23 because it follows the last number (Topic 22) in the second 30(b)(6) notice served by common interest counsel before the Gray Plaintiffs filed their lawsuit.

[2] *First*, the Gray Plaintiffs accepted the City's request that the relevant time period for Topics 23, 24, and 26 commence as of the 2004 Republican National Convention. The Gray Plaintiffs also agreed to narrow Topic 25 such that the earliest relevant date is January 1, 2011. *Second*, based on the City's representation during the meet and confer about the difficulty of locating an individual qualified to testify regarding the 1977 consent decree between the NYPD and the New York Civil Liberties Union in *Black v. Codd*, the Gray Plaintiffs agreed to withdraw this subpart of Topic 23. *Third***,** in response to the City's request for a definition of the term 'visual journalist' as used in the Gray 30(b)(6) Notice, counsel for the Gray Plaintiffs defined the term in a December 13, 2021 email to the City.

[3] The meet and confer lasted one hour. Robert Balin, Wylie Stecklow, Mickey Osterreicher, Nimra Azmi, Kathleen Farley, and Abigail Everdell attended for the Gray Plaintiffs. Dara Weiss and Jenny Weng attended for the City.

violations of their constitutional rights arising from mistreatment by NYPD officers;[4] and the CCRB's 2017 public report entitled "Worth a Thousand Words: Examining Officers' Interference with Civilian Recordings of Police". *Id.*

During the meet-and-confer, the City stated that they it would not designate a witness or respond to *any* questions related to Topic 24. The City did not—and cannot—dispute that the testimony sought by this Topic is highly relevant to the Gray Plaintiffs' *Monell* claim. Rather, the City took the position that the "deliberative process privilege" would protect some of the information sought, and demanded that the Gray Plaintiffs reformulate the request to avoid topics the City considers privileged. The Gray Plaintiffs disagreed with the City on the privilege, but nevertheless offered to add a proviso to Topic 24 stating that this Topic seeks testimony "to the extent it doesn't violate the deliberative process privilege." The City refused this offer.

The City's invocation of the deliberative process privilege as a wholesale objection to Topic 24 is inappropriate, both because the City misapprehends the scope and application of the deliberative process privilege, and because it cannot refuse to designate any witness for this Topic on the basis of a partial objection.

"The deliberative process privilege 'does not operate indiscriminately to shield all decision-making by public officials.'" *Nat'l Rifle Ass'n of Am. v. Cuomo*, 332 F.R.D. 420, 434 (N.D.N.Y. 2019) (internal citations omitted). Nor is the privilege an "absolute bar"; rather, it is "qualified." *Id*. Where, as here, "the party's cause of action is directed at the government's intent in rendering its policy decision and closely tied to the underlying litigation then the deliberative process privilege 'evaporates.'" *Id.* The deliberative process privilege is especially inapplicable in civil rights actions like this one, where the government's decision-making process is central to the claims: "When the decision making process is itself at issue, particularly in a civil rights action, the deliberative process privilege and other privileges designed to shield that process from public scrutiny may not be raised as a bar against disclosure of relevant information; it must yield to the overriding public interest in challenging discrimination.'" *ACORN v. County of Nassau*, No. CV 05–2301, 2008 WL 708551, at *4 (E.D.N.Y. Mar. 14, 2008). *See also Azon v. LIRR*, No. 00 CIV 6031, 2001 WL 1658219, at *3 (S.D.N.Y. Dec. 26, 2001) ("[W]hen the subject of the litigation ... is the very nature of the decision-making process, the privilege should not foreclose the production of critical information.").

Here, the City's decision-making process indisputably lies at the core of the Gray Plaintiffs' *Monell* claim, which alleges that decades of policy decisions by the City have resulted in a longstanding pattern and practice of unconstitutional treatment of the press by the NYPD. In order to pursue their *Monell* claim, the Gray Plaintiffs are plainly entitled to take testimony from a 30(b)(6) witness regarding when (if at all), how, and for what reason(s) the City reviewed and

---

[4] Topic 24 sets forth a non-exhaustive list of 16 relevant lawsuits filed by journalists . *Id.*

Page 4

revised its policies, practices, directives and training regarding officers' treatment of/interference with journalists who are recording police activity in public places. To permit the City to wield the deliberative process privilege to refuse to name any witness on this core Topic broadens the scope of the privilege well beyond what is reasonable or appropriate. *See Children First Found., Inc. v. Martinez*, No. 04–0927, 2007 WL 4344915, at *7 (N.D.N.Y. Dec. 10, 2007) (holding that the privilege only protects the government's deliberative process from inquiry if it is collateral to the litigation); *Anilao v. Spota*, No. CV 10-32 JFB AKT, 2015 WL 5793667, at *20–22 (E.D.N.Y. Sept. 30, 2015) (holding that deliberative process privilege could not be used to shield deposition questions in *Monell* claim, since the questions went "to the essence of the claims raised in this case, namely, the decision making process involved in the determination to prosecute the Plaintiffs.").

Moreover, even if the City *could* properly invoke the deliberative process privilege as to specific questions, which it cannot, the appropriate procedure would be to object to those questions during the course of the deposition—*not* to block appropriate and relevant discovery to which the Gray Plaintiffs are entitled by refusing to produce *any* witness at all. *See Pirnik v. Fiat Chrysler Automobiles, N.V.*, No. 15-CV-7199 (JMF), 2018 WL 4054856, at *2 (S.D.N.Y. Aug. 24, 2018) (holding that the deliberative process privilege "does not call for quashing or modifying the subpoena ex ante; at most, it calls for allowing a lawyer from the Government to attend the deposition to object to particular questions on privilege grounds."). Indeed, even where the deliberative process privilege may be applicable to the substance of conversations, courts have held that plaintiffs are nonetheless entitled to "factual testimony" about internal discussions, meaning "when, where, and who" and "whether a specific topic was discussed." *See, e.g., Fair Hous. in Huntington Comm. v. Town of Huntington,* No. 02-CV-2787 (DRH WDW), 2010 WL 11629264, at *1–2 (E.D.N.Y. Mar. 31, 2010).[5]  In short, under settled law, the City should be compelled to produce a witness in response to Topic 24.

**Topic 26.**  Topic 26 seeks testimony relating to "Disciplinary actions taken against Officers from 1999[6] to the present following allegations or complaints that such Officers arrested, assaulted, or unreasonably interfered with any member of the press engaged in newsgathering." *Id.* Obtaining testimony from the City on this topic is critical to the Gray Plaintiffs' ability to

---

[5] It should also be noted that previously in this litigation, the City was instructed by Magistrate Judge Gorenstein that the proper manner to invoke privilege does not include stopping a deposition. "What you need to do is make your objections. I think the parties mark the materials confidential. I think that gives you 90 percent of what you need anyway, maybe even 100 percent of what you need." *See* Transcript of Aug. 19, 2021, *In Re New York City Policing During Summer 2020 Demonstrations,* Transcript at 36:25-37:5.  Here, the deposition must go forward and if the City believes a question impacts the deliberate process privilege, it can mark the question for a ruling or allow the witness to answer with a confidentiality marking in the transcript pending an application to be made by the City to the Court.

[6]  As noted above, the Gray Plaintiffs have agreed to narrow the relevant time period for Topics 23, 24, and 26 so that they commence as of the 2004 Republican National Convention.

Page 5

demonstrate the City's long record of permitting the NYPD to obstruct and harass journalists with no meaningful disciplinary repercussions.

The City has flatly refused to provide testimony regarding Topic 26, claiming that it would require the City to review too many disciplinary records. Putting aside that voluminousness is not a basis to withhold an entire category of critically relevant testimony, the City has ample means to approach the task strategically—as the Gray Plaintiffs noted during the meet-and-confer and in follow-up email correspondence. For example (and again, as the Gray Plaintiffs suggested to the City), the City can easily search for disciplinary records that reference the relevant sections of the NYPD Patrol Guide relating to the treatment of members of the press (Sections 212-49 and 208-03). The City can also search for records relating to the dozens of specific incidents that are identified in the Gray Plaintiffs' FAC, at ¶¶ 105-108, which include names, dates, and references to corresponding news reports and/or lawsuits. The Gray Plaintiffs also believe that the Office of the Deputy Commissioner, Public Information would have much of this information.[7] The City's refusal to even run these initial searches; to work with the Gray Plaintiffs to strategically identify relevant disciplinary proceedings; or to designate and produce a witness is wholly unjustified. To the contrary, it is indicative of the City's broader stonewalling approach to this litigation.

For these reasons, the Gray Plaintiffs respectfully request that this Court order the City to produce 30(b)(6) witnesses to testify to Topics 24 and 26. The Gray Plaintiffs stand ready to submit additional briefing if the Court so desires.

        Respectfully Submitted,

        */s/ Robert D. Balin*
        Robert D. Balin

Cc: All counsel of record via ECF

---

[7] The City has represented it has inquired of DCPI and that the Gray Plaintiffs are wrong in this belief.